IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JAMES HORNER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:02-CV-0216 |
| | § | |
| JO ANNE BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Plaintiff JAMES HORNER, brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant JO ANNE BARNHART, Commissioner of Social Security (Commissioner), denying plaintiff's application for a term of disability, and disability benefits.  Both parties have filed briefs in this cause. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be AFFIRMED.

I.
THE RECORD

On March 17, 1998, plaintiff applied for all disability insurance benefits for which he was eligible pursuant to Titles II and XVIII of the Social Security Act (Transcript [hereinafter Tr.] 55-58).  Plaintiff alleges he became disabled on March 19, 1997 due to a combination of impairments including chronic obstructive pulmonary disease (COPD), degenerative disc

disease, a torn rotator cuff (post surgery) and chronic brain syndrome. (*Id*. at 55; Plaintiff's Brief at 1). Plaintiff was born September 29, 1945 (Tr. 55, 261), and possesses a high school diploma with two (2) years of vocational training. (Tr. 263). Plaintiff's past relevant work includes work as a maintenance electrician and electrician, utilities, both categorized as medium, skilled jobs. (Tr. 23, 286-287).

     Plaintiff filed a Request for Hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on June 3, 1999. (Tr. 256-296). On September 13, 1999, ALJ Robert G. Holt rendered an unfavorable decision, finding plaintiff not entitled to benefits at any time relevant to the decision. (Tr. 24). The ALJ determined plaintiff had the medically determinable impairments of chronic pulmonary insufficiency, degenerative disk disease, and chronic brain syndrome and that while such impairments were "severe," they did "not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." (Tr. 22, Finding No. 3). The ALJ further found, "The claimant's statements concerning his impairments and their impact on his ability to work are not entirely credible in light of the claimant's description of his activities and life style." (*Id*., Finding No. 4). The ALJ then determined plaintiff retained the, "residual functional capacity [RFC] to perform light work activity, where he can sit and/or stand at will." (*Id*., Finding #5). Based on this RFC, and upon vocational expert (VE) testimony, the ALJ found plaintiff could not return to the work he had performed in the past, (Tr. 23, Finding #6), and that he would be unable to perform the full range of light work. (*Id*., Finding # 12). However, the ALJ concluded petitioner was, "capable of making an adjustment to work which exists in significant numbers in the national economy." (*Id*.). Examples of such work included production line solderer, cashier II, and storage rental clerk.

(*Id*.)   The ALJ thus concluded plaintiff was not under a disability at any time through the date of his decision.  (Tr. 23).

Upon the Appeals Council's denial of plaintiff's request for review on June 19, 2002, the ALJ's determination that plaintiff was not under a disability became the final decision of the Commissioner.  (Tr. 5-7).  Plaintiff now seeks judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

II.
STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made.  *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989).  To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history.  *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94(5th Cir. 1972)).  If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding.  *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980).  Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical

evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d at 164.

Stated differently, the level of review is not *de novo*. The fact that the ALJ <u>could</u> have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ decision.

## III.
## ISSUES

The ALJ made the determination that plaintiff is not disabled at Step Five of the five-step sequential analysis. Therefore, this Court is limited to reviewing only whether there was substantial evidence in the record as a whole supporting a finding that plaintiff retained the ability to perform other work that exists in significant numbers in the national economy, and whether the proper legal standards were applied in reaching this decision. To this extent, plaintiff presents the following issues:

1. The administrative law judge erred by failing to properly weight (sic) the testimony of treating, consulting and non-examining, paper review physicians;

2. The ALJ's residual functional capacity findings are not supported by substantial evidence;

3. The ALJ's credibility findings are unfair, inappropriate and unsupported by substantial evidence; and

4. The ALJ submitted and inaccurate hypothetical to the Vocational Expert and may not properly rely on the VE response.

IV.
# MERITS

### Issues #1 and #2
### The Weight of Physician Testimony and the RFC Finding

Plaintiff states the ALJ erred because he failed to properly weigh the opinions of petitioner's treating, consulting and non-examining paper review physicians. Petitioner asserts the opinion of the ALJ is unclear because he cannot tell what weight the ALJ gave to the various physicians. (Plaintiff's Brief at 7-8). Plaintiff references Dr. Oveson, a treating physician; Dr. Pratley, a consulting, one-time examining orthopaedic surgeon; Dr. Carlisle, a consulting, one-time examining psychologist; and Dr. Walker, a consulting, one-time examining physician. (*Id.* at 8). Plaintiff further explains the record contains two or three non-examining, paper review physician opinions. (*Id.*). In his brief, plaintiff references portions of these physicians' findings as follows:

> Dr. Mark Oveson, Has treated plaintiff since August of 1995 (Tr. 192) - Dr. Oveson reports that Plaintiff continually suffers low back, right leg and C-spine pain (Tr. 170). He reports that Plaintiff suffers from severe COPD, fatigue and is not capable of prolonged sitting (Tr. 171). He reported that Plaintiff suffered a severe limitation of functional capacity and was incapable of minimal sedentary activity (Tr. 180).
>
> Dr. Pratley, Consulting orthopaedic physician - Diagnosis: 1. Osteoarthritis, severe, lumbar spine. 2. Status post L5/S1 lateral mass fusion for a Grade 2 to 2 ½ spondylolisthesis. 3. Ankylosis, partial, lumbar spine. 4. Status post rotator cuff repair, left shoulder. "Having had the opportunity to examine James Horner we feel that on the basis of the x-rays of the lumbar spine he would be a qualified injured worker and is legitimately disabled." (Tr. 207)
>
> Dr. Eric Walker, Examining, consulting physician - Dr. Walker specified that Plaintiff is not capable of walking to standing more than four hours in an eight hour day and is limited to lifting less than 20 pounds. He reported that Mr.

>Horner must be able to sit, stand or walk at will (Tr. 231) and that he will require unscheduled rest during the work day in addition to normal breaks (Tr.232).
>
>Dr. Carlisle, Consulting, one time examining psychologist - Diagnostic impressions: Confusion and memory problems, cause unknown (Tr. 201).

(Plaintiff's Brief at 10-11). Plaintiff's contends the ALJ ignored critical testimony of these treating and examining physicians without good cause for doing so. More specifically, plaintiff argues the ALJ's RFC finding was not consistent with the opinions of Drs. Walker and Oveson. (*Id*. at 11).

As argued by defendant, however, it does not appear the ALJ gave substantial weight to the State Agency physicians' opinions. (Defendant's Brief at 5). Defendant states,

>Specifically, State Agency physicians opined that Plaintiff could perform light work, with only occasional postural limitations, no environmental limitations, and no manipulative limitations in any area, including his ability to reach. (Tr. 221-228). Conversely, the ALJ found that Plaintiff retained the ability to perform light work, limited by postural, manipulative, environmental and mental limitations. (Tr. 22). Thus it is clear that the ALJ did not rely on the State Agency physician's opinion over that of Plaintiff's examining physicians when making his RFC determination.

(*Id*.). Additionally, in filling out a "Medical Assessment," Dr. Oveson, indicated plaintiff was not capable of performing sustained, sedentary work activity over an 8 hour period because, "prolonged sitting cause pain but he could do something." (Tr. 171). The doctor further determined plaintiff was capable of performing sustained sedentary work activity for 40 hours a week. (*Id*.). As stated above, plaintiff contends the ALJ erred because he failed to appropriately weigh the doctor's statement (at Tr. 180) that plaintiff was incapable of minimal sedentary activity. Such statement/diagnosis was made in August of 1997. As argued by defendant, the doctor gave no explanation, at that time, of this diagnosis. (Defendant's Brief at 6). Further, the determination that plaintiff was capable of performing sustained sedentary work

activity for 40 hours a week was made in April of 1998. (Tr. 171).

In response to a "Medical Questionnaire" Dr. Walker, a consulting physician, stated plaintiff's complaints of pain were "generally credible and consistent with his diagnosis." (Tr. 230). Dr. Walker also determined plaintiff could frequently perform work tasks involving seizing, holding, grasping and turning, that he could sit 4 hours in an 8-hour work day and could stand or walk 4 hours in an 8-hour work day, could lift 11-19 pounds, and would seldom experience limitations in bending or stooping. (Tr. 231). Finally, the doctor concluded plaintiff would need a job which permitted shifting of positions at will between sitting, standing and waking. (*Id.*).

The ALJ did not find plaintiff's subjective complaints of pain to be entirely credible. (Tr. 20). The ALJ appears to have reached this conclusion based upon plaintiff's failure to take pain medication. (*Id.*). The ALJ found plaintiff retained,

> [T]he residual functional capacity to perform light work activity, where he can sit and/or stand at will. During an 8-hour work day he can sit for up to 4 hours and stand for up to 4 hours. The claimant is right hand dominate. He can no more than occasionally use his left upper extremity for pushing and pulling and no more than frequently reach with his left upper extremity. He can no more than occasionally reach over head, do work involving sudden neck movements, climb, balance, stoop, kneel, crouch and crawl. He is unable to work where he is exposed to the weather or in extreme cold or hot temperatures. He can no more than frequently understand, remember, and carry out, detailed instructions, maintain a production rate schedule, and work with the general public.

(Tr. 20-21). It is true that Dr. Walker felt plaintiff would require unscheduled rest during his work day. However, such statement was brief and conclusory and not supported by other evidence in the record, *i.e.* the statement of plaintiff's treating physician Dr. Overson that he had not advised plaintiff to rest as often as possible during the day. (Tr. 171). Additionally, while the questionnaire posed to Dr. Overson related to sustained sedentary work, it appears the ALJ

consistently applied the medical evidence, that plaintiff experienced pain from prolonged sitting and could only sit for 4 hours, but that he could still lift up to 20 pounds, as required by light work. (Tr. 203; 232). Finally, with the exception of the opinion of Dr. Pratley referenced by plaintiff, the RFC finding by the ALJ is consistent with the medical opinions of record. Dr. Pratley determined plaintiff was a qualified injured worker and was legitimately disabled. (Tr. 207). As stated by defendant, however, "the regulations make clear that an opinion by a medical source regarding a claimant's RFC or disability status, is not entitled to 'any special significance' because the final responsibility for deciding those issues is reserved to the Commissioner. 20 C.F.R. §404.1527(e)." (Defendant's Brief at 9). In *Shepherd v. Apfel*, 1999 WL 1277530, 3, 65 Soc.Sec.Rep.Ser. 501, 501 (E.D.La. Dec 30, 1999), the court noted, "The Commissioner has considerable discretion in assigning weight to medical opinions and is free to reject the opinion of any physician when the evidence supports a contrary conclusion." See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d), (e). In the instant case, as discussed *supra*, there was evidence, primarily that of plaintiff's treating physician, to support a contrary conclusion. Plaintiff's claims should be denied.

Issue #3
The ALJ's Credibility Findings

Plaintiff next argues the ALJ's credibility findings are unfair, inappropriate and unsupported by substantial evidence. Plaintiff contends the ALJ overstated his daily activities and noted he did not take pain medication. Plaintiff then directs the Court to plaintiff's long work record, the medical testimony/records, plaintiff's consistency in reporting his ailments to physicians, the treatment modalities utilized, and the testimony of lay witness Susan Horner.

Defendant counters referring to plaintiff's own testimony and application documents wherein he states he,

> watches television, makes toast and coffee for breakfast, 'putter[s]' in the kitchen, occasionally visits with friends, walks around and waters the yard, 'putters' in the garage, feeds apples to his ex-sister-in-law's horses, and went fishing for thirty minutes the week prior to the hearing. (Tr. 85, 89, 264-267). Plaintiff also testified that he could do laundry and dishes, cook and prepare meals, take out the trash, change the bed sheets, shop for groceries, write checks and pay bills, he walks as much as possible, and cares for his own personal grooming.

(Defendant's Brief at 10). Defendant further cites to plaintiff's treating physician, Dr. Oveson who noted in April of 1998 that plaintiff was not on pain medication although such had been prescribed. (Respondent's Brief at 10 citing Tr. 170).

The question before the Court is not whether a different decision could have been reached by the ALJ or even that a different decision should have been reached. Nor is the issue whether this Court agrees or disagrees with the ALJ. This Court may not reevaluate the evidence and reach a determination that the ALJ was wrong and should have found plaintiff to be credible. Instead, this Court must determine whether or not the ALJ's decision is without significant evidentiary support. As discussed above, and based upon the representation by the ALJ that he considered and weighed the evidence and testimony of record, including the opinions of Drs. Walker and Oveson, the testimony of plaintiff's sister-in-law, and plaintiff's own description of his daily activities, it cannot be said the decision of the ALJ lacks evidentiary support. (Tr. 19-21). While the undersigned may disagree, or might have reached a different conclusion, it appears the ALJ properly supported his conclusion with the evidence of record.

In finding no reversible error, it is of significance that the ALJ did not find plaintiff to be completely unworthy of belief. Instead, the ALJ found that plaintiff had an impairment which

caused pain, but that plaintiff's testimony regarding the <u>severity</u> of his pain or his limitations was not <u>fully credible</u>. This determination by the ALJ is an area particularly within the province of the administrative fact finder and will very rarely be overturned on appeal. Further, it cannot be said that the administrative record does not support the ALJ's finding in this regard. In addition to other medical record evidence, the ALJ referred, in his opinion, to the May 28, 1999 medical questionnaire of Dr. Walker, which indicated that plaintiff's pain or side effects from pain medication did not compromise his ability to maintain sustained attention or concentration, and that plaintiff could work an 8-hour day if he could sit for 4 hours and stand or walk for 4 hours. (Tr. 18).

Issue #4
The Accuracy of the Hypothetical

Plaintiff alleges the ALJ posed a defective hypothetical to the Vocational Expert (VE) and, consequently, was not entitled to rely on the findings of the VE. In his brief, plaintiff states, "Plaintiff has criticized the ALJ's weighting of medical evidence and Plaintiff argues that the ALJ's RFC findings and credibility findings are unsupported by substantial evidence. It follows that the hypothetical submitted to the vocational expert was inaccurate." (Plaintiff's Brief at 16, internal citations omitted). Plaintiff then directs the Court to the Vocational Evaluation of consultant Alfred J. Marchisio at Tr. 241 to 244.

Defendant contends that for the reasons already discussed, plaintiff's impairments and limitations were considered by the ALJ in detail and that the hypothetical posed to the VE at the hearing, incorporated such limitations. Defendant also argues the opinion of Mr. Marchisio is immaterial to the instant case pursuant to *Haywood v. Sullivan*, 888 F.2d 1463, 1471, 72 (5th Cir.

1980)(To be material, evidence must relate to the time period for which benefits were denied). (Defendant's Brief at 14).

At the hearing, the ALJ posed the following hypothetical:

This hypothetical individual is capable of performing work at the light exertional classification, but has exertional limitations which prevent standing and walking for more than four hours or sitting for more than four hours in an 8-hour workday with normal breaks and it requires the ability to sit or stand at will, can perform no more than occasional pushing or pulling with the left upper extremity, has exertional limitations which prevent no more than occasional climbing, balancing, stooping, kneeling, crouching or crawling, can perform no more than frequent handling.

....

Should exposure to weather, extreme cold and extreme heat, no more than occasional overhead reaching with the left extremity and is right hand dominant, no more than occasional sudden neck movements, has mental limitations which prevent no more than frequent ability to understand, remember or carry out detailed instructions, maintain a production rate schedule or work with the general public.

(Tr. 287-88). The ALJ further included the additional vocational characteristics for this hypothetical individual of being age 51 to 53 with a high school education and the same past relevant work as plaintiff's. (*Id*. at 288). The VE then determined such an individual would be capable of work in the national economy including solder production line worker, light and unskilled with 600 jobs within Idaho and approximately 190,000 jobs nationally; cashier clerical II worker, light and unskilled with 1,400 jobs within Idaho and approximately 350,000 jobs nationally; and storage facility rental clerk, light and unskilled with 350 jobs within Idaho and approximately 40,000 jobs nationally. (Tr. 288-89).

The following exchange then occurred between the ALJ and the VE:

Q: Hypothetical two is the same as hypothetical one except the person can perform no more than sedentary exertional classification work. Are there skilled

or semiskilled sedentary jobs which such a hypothetical individual could perform utilizing the same skills acquired in any of the past jobs?

A: No.

Q: And why is that?

A: The individual's past work does not have skills that transfer to sedentary work.

Q: There'd be no sedentary electrical jobs that such a person could perform.

A: No.

Q: Okay, hypothetical three is the same as hypothetical one except the person is required to lay down for three hours out of an eight hour day. Are there any jobs that such a person could perform?

A: No.

Q: Hypothetical four is the same as hypothetical one except the person cannot complete a normal work day. Are there any jobs that such a person could perform?

A: No.

....

Q: Okay. Hypothetical number five is the same as hypothetical one except the person when they stand must be able to walk around within five feet of the work station. Would that change your answer to hypothetical number one?

A: Well it would erode the occupational base on the solder production line by 25 percent.

Q: Would the others remain?

A: Yes.

Q: And hypothetical six is the same as hypothetical one except the person must be able to leave the work station at will when he needs to stand. Would there be any jobs that such a person could perform?

A: No.

(Tr. 289-91). In his opinion, the ALJ determined, as discussed *supra*, plaintiff had the residual functional capacity consistent with the first hypothetical. (Tr. 20-21). Based upon such hypothetical, the VE testified plaintiff retained the capacity to perform the above referenced jobs. As previously discussed, the medical evidence supports the RFC finding by the ALJ, and the hypothetical posed to the VE at the hearing was likewise supported by the medical evidence. The existence of a vocational consultation report dated September 18, 2001, some two years after the ALJ decision, does not change this finding. The ALJ was present at the hearing, and the ALJ was the appropriate authority to weigh the evidence of record and to determine the credibility of the witnesses. Even if this Court were to find the more recent vocational consultant's report persuasive, the Court could not reverse based upon such opinion unless the Commissioner's findings were not supported by substantial evidence. A reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Here, the VE testimony which was heard by the ALJ constitutes substantial evidence to support the determination of not disabled, and plaintiff's claim must fail.

V.
RECOMMENDATION

THEREFORE, for all of the reasons set forth above, it is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the defendant Commissioner be AFFIRMED.

VI.
## INSTRUCTIONS FOR SERVICE

The District Clerk is directed to send a copy of this Report and Recommendation to plaintiff's attorney of record and to the Assistant United States Attorney by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 9th day of September 2005.

*[signature]*
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the file mark on the first page of this recommendation. Service is complete upon mailing, Fed. R. Civ. P. 5(b), and the parties are allowed a 3-day service by mail extension, Fed. R. Civ. P. 6(e). Therefore, any objections must be filed **on or before the fourteenth (14th) day after this recommendation is filed**. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).